John FALL;[1] Bob Lang; Luke Gibson; Scott Embry; Randy Chummley; Glen Little; Bob Hicks; Brian Collins; Chet Layne; Bo Branham; Jimmy Haggard; Walter Anderson; Glen Moore; Richard L. Mcquitty; Vic Cordle; Bill Barker; Stirl Maiden; Leonard Hendrickson; Arthur Lee Simmons; Ralph Kenser; Leroy Simmons; J.W. Crowe; Jamie Bussell; Dave Fichthorn; John Wilson; Jeff Baker; Adkins Darcy; Mark Hackney, Appellants

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2007–CA–000885–MR.

Court of Appeals of Kentucky.

Jan. 25, 2008.

---

1. Although the briefs of the appellants and appellee are styled "John Paul, et al," the appellant's correct name is John Fall.

M. Alex Rowady, Winchester, KY, for Appellants.

Lyndol Scott Miller, KSP Legal Office, Frankfort, KY, for Appellee.

Before KELLER, THOMPSON, and WINE, Judges.

## OPINION

WINE, Judge.

John Fall, and the twenty-seven other Appellants similarly situated in this case ("Appellants"), appeal the Montgomery Circuit Court's order which denied the motion for release of funds seized by the Kentucky State Police ("KSP") from an illegal gambling operation on Marvin Watkins' farm and ordered those funds forfeited to the Commonwealth of Kentucky. Having reviewed the case, we affirm.

The facts of this case are not in dispute. On April 16, 2005, the KSP executed a search warrant related to a cockfighting operation at Marvin Watkins' ("Watkins") farm in Montgomery County. The raid took place during a cockfighting event with approximately 500 spectators in attendance. KSP seized $425,335.00 during the raid, including $171,000.00, which was found in a box seen being carried from the cockfighting arena next to Watkins' house, approximately 100 yards away. Thereafter, Watkins was indicted for engaging in organized crime/criminal syndication and later pled guilty on July 18, 2006, to the amended charge of conspiracy to promote gambling, KRS 528.040. Watkins dis-

claimed ownership of $171,000.00 of the funds as a part of his plea agreement.

Once Watkins' case was resolved, Appellants filed a collective motion to be deemed lawful claimants of the $171,000.00. On November 7, 2006, the trial court conducted a hearing to determine the source of the collected money and how it was collected by the KSP. Following the hearing, on February 28, 2007, the trial court denied Appellants' claim to the $171,000.00, finding that the funds should be forfeited to the KSP pursuant to *Gilley v. Commonwealth*, 312 Ky. 584, 229 S.W.2d 60 (1950). On March 29, 2007, the trial court denied Appellants' motion to vacate its February 28, 2007, order. This appeal followed.

Appellants first argue that the trial court erred in failing to hold an evidentiary hearing. They point out that the court characterized the November 7 hearing to be "[a] hearing on the issue of how the money was found and collected by KSP...." As such, Appellants contend that they were not put on notice that the court was going to reach a conclusion as to the ultimate issue of whether the confiscated proceeds could be forfeited to the State and were never given an opportunity to lay claim to ownership of the funds. In contrast, the Commonwealth argues the November 7 hearing was an evidentiary hearing at which the Appellants elected not to appear. The Commonwealth further suggests that an evidentiary hearing would prove futile for Appellants regardless, because the source of the funds is not in dispute and the money is clearly subject to forfeiture.

While the Appellants argue they were entitled to an additional hearing to present evidence as to why they would be entitled to reimbursement of the funds, they fail to describe what additional evidence they would have presented. All parties to the case agree on the facts, including that the

$171,000.00 represents entry fees Appellants paid to have their roosters participate in the cockfights at Watkins' farm. As such, the case can be resolved as a matter of law.

KRS 500.090(2) authorizes the forfeiture of money which has been obtained or conferred in violation of any criminal statute. However, KRS 500.090(4) directs a trial court to "remit the forfeiture of property when the lawful claimant: (a) Asserts his ... claim before disposition of the property pursuant to this section; (b) Establishes his ... legal interest in the property; and (c) Establishes that the unlawful use of the property was without his ... knowledge and consent." For purposes of this section, "lawful claimant" means the owner or lienholder of record. KRS 500.090(4). The Commonwealth does not dispute the Appellants' claims to ownership of the funds. The only issue then before the trial court was whether Appellants were innocent owners of the $171,000.00.

> KRS 528.010(3)(a) defines gambling as: staking or risking something of value upon the outcome of a contest, game, gaming scheme, or gaming device which is based upon an element of chance, in accord with an agreement or understanding that someone will receive something of value in the event of a certain outcome. A contest or game in which eligibility to participate is determined by chance and the ultimate winner is determined by skill shall not be considered to be gambling.

Here, Appellants concede that the funds in question represent the money that each owner put forth ($1,000.00 per rooster) to have his rooster fight other roosters. Once the winners were declared, the participants divided the "pot" among the number of people whose rooster won a significant number of fights. However, citing *Gilley*, Appellants argue though that it does not follow that the money was subject to forfeiture.

We agree with the trial court that the Appellants were not innocent owners. Contrary to the Appellants' position, gambling as defined under KRS 528.010 requires only that there be an "element of chance." No owner of a racehorse or a rooster would ever guarantee a winner. Regardless of how much skill may precede the race or fight, it is the chance or luck that an underdog may prevail that encourages the betting public. Thus, the $171,000.00 is clearly an integral part of the illegal gambling operation as owners would not breed, train, feed or enter these roosters but for the opportunity to receive something more than the $1,000.00 entry fee they pay. The $171,000.00 at issue here was clearly part of the stakes intended to lure persons to wager, as well as to encourage owners to enter their roosters in the fights. And unlike forfeiture proceedings under KRS 218A.410, the money was automatically subject to forfeiture upon a finding that the funds were used in the commission or furtherance of the gambling operation. *See Commonwealth v. Fint*, 940 S.W.2d 896, 897 (Ky.1997). Because the Appellants failed to establish that they were innocent owners of the $171,000.00, the trial court properly ordered the forfeiture of the funds to the state.

Accordingly, we affirm the Montgomery Circuit Court's order denying the Appellants' motion for release of the $171,000.00 and ordering forfeiture of the funds to the Commonwealth.

ALL CONCUR.